Argued and submitted April 9, 1982, affirmed in part, reversed in part and remanded January 19, petition for review withdrawn March 21, 1983 (294 Or 683)

WILLITS,
*Respondent - Cross-Appellant,*
*v.*
WILLITS,
*Appellant - Cross-Respondent.*
(No. A7908-03825, CA A21250)

658 P2d 508

R. P. Joe Smith, Portland, argued the cause and filed the briefs for appellant - cross-respondent.

John D. Burns, Portland, argued the cause and filed the brief for respondent - cross-appellant.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff (wife) brought this suit in equity for a "Declaratory Judgment for Declaratory Relief, Accounting and Damages" arising out of a dispute with defendant (husband) over the terms of the property settlement agreement (PSA) incorporated in their 1970 dissolution decree. The dispute centered on the following PSA provisions dealing with six pieces of real property and a promissory note.

"3. *Ownership of Properties*

"All real estate owned by the parties, including ownership of real estate, rights to purchase on real estate contracts and all interests as vendors in installment sales of real estate, shall continue to be owned by the parties in joint ownership with rights of survivorship, and not as tenants in common.

"4. *Management and Control of Real Estate*

"Husband is hereby authorized and directed to manage all real estate and interests in real estate as buyer or seller which are owned by the parties or in which wife has an interest, except the property at 12525 S. E. Main Street, Portland, Oregon. Wife does hereby appoint her husband as her agent and attorney in fact on behalf of her interests in said property to carry on or authorize maintenance expenses; receive payments of rent, note payments and contract payments, and deposit same; pay all bills against said property; and do all other acts and things appropriate for the management of said real property. Payment of all of the obligations, as mortgagor and contract vendee, of the parties shall be made by the husband, * * *. During husband's lifetime or during the continuation of this agreement, whichever shall be the lesser, *wife makes no claim to any income from the following property in which the parties have an interest,* all of which properties are located in Portland, Multnomah County, Oregon:

"3322 S. E. 122nd Avenue;

"6128 S. E. 88th Avenue;

"2612 S. E. 141st Avenue;

"3400 S. E. 122nd Avenue;

"11848 S. E. Powell Boulevard; and

"5025 N. E. Sixth Avenue,[1]

---

[1] For simplicity, the properties will be identified by their house numbers. For example, the property located at 3322 S. E. 122nd Avenue will be referred to as "3322."

"as well as the promissory note made by Collector's Book Store and payable to the parties. Husband shall report all income from such properties and shall pay in full any income tax attributable to said properties." (Emphasis supplied.)

The PSA also provided that husband pay spousal support but that, if the Collector's Book Store failed to make monthly payments on its promissory note, spousal support would be reduced by one-half of the amount it failed to pay.

When the PSA was signed in 1970, the parties were receiving payments of principal and interest on the land sale contracts for 3322, 6128 and 2612 and on the promissory note and rents for 3400, 11848 and 5025. In 1974, the parties sold 5025 on a land sale contract. In 1977, the parties sold 3400 on a land sale contract and split the $10,000 down payment between them. After this suit was filed in 1979, the land sale contract for 3322 was paid off in a lump sum of $11,633.47, which is being held in trust pending the outcome of this suit.

From the time of the dissolution until the suit was filed husband received and retained all of the payments and rents except the $5,000 for 3400 paid to wife and the payment for 3322 held in trust. Husband managed the properties, paying maintenance expenses, the underlying obligations and the property taxes for the appropriate properties. He also paid all the income taxes arising out of the rents and payments he received.

The issue in this suit is the meaning of the term "income" in the PSA. The parties agree that the rents and the interest portion of the land sale contract and promissory note payments were "income" and, therefore, husband's property under the terms of the PSA. The dispute centers on those portions of the promissory note and land sale contract payments that were return of principal or capital gain. At trial, husband argued that the parties intended "income" to mean all of the note and contract payments; consequently, he was entitled to retain them. Wife argued that the parties intended income to mean only the interest portion of the note and contract payments. She contended that the non-income portions constituted "an inter vivos transfer of assets owned jointly with rights of

survivorship" that should have been "divided between the parties on the basis of their life expectancies" — 61.6 percent to wife and 38.4 percent to husband.

Wife requested three types of relief: (1) a declaration of the parties' rights to the non-interest portions of the note and contract payments; (2) an accounting by husband of all monies received by him on the contracts and note, including an allocation of amounts for rents, interest and principal; and (3) a judgment against husband for any monies he retained that should have been paid to wife.[2]

In its findings of fact, the trial court addressed the parties' intent as to the distribution of the non-interest portion of the payments: "Any return of capital from the sale of any of the properties was to be evenly divided between the parties." The court also found that one of wife's attorneys had prepared an accounting of funds received by husband since the dissolution.

The court entered the following conclusions of law:

"1.  The term 'income' in the agreement of February 5, 1970, and as used therein, excludes net return of capital on the sale of any real property belonging to the parties. The term 'expenses' in the agreement of February 5, 1970 includes maintenance, property taxes, payments of principal and interest on mortgages and income taxes upon gains realized upon sale.

"2.  Defendant owes Plaintiff one-half of all net return of capital, after taxes, on the following properties:

"6128 SE 88th Avenue,
"3400 SE 122nd Avenue,
"5025 NE 6th Avenue; and
"2612 SE 141st Avenue,

"less the sum of $5,000 heretofore paid on 3400 SE 122nd Avenue.

"3.  From the sale of 3322 SE 122nd Avenue, and the funds currently being held therefore [sic] by Defendant's counsel, Defendant may be reimbursed for the property taxes paid on that property, and the balance received should be split equally between the parties. Any interest accrued on funds since they were placed in trust should be

---

[2] Wife's complaint raised other issues and requested additional relief that were not addressed by the trial court and are not before us on appeal.

divided according to the ratio of the total payments made to the parties of the pre-interest amount.

"4. Each party should pay his or her own attorney's fees. Each party should pay one-half of the fee for the accounting to Ferris Boothe * * *."

In a letter to the parties, the court defined the term "net return of capital."

"Net return of capital means the total amount received for sale of a property after deducting all expenses incident to its operation, including interest and taxes. [Husband] is entitled to deduct all such expenses, including all capital gain taxes paid by him before division of the net capital received.

In its decree, the court entered judgment against husband for the following amounts:

| | | |
|---|---|---|
| "A. | 3322 SE 122nd Avenue | $ 1,513.31 |
| "B. | 6128 SE 88th Avenue | 4,017.00 |
| "C. | 3400 SE 122nd Avenue | 8,581.50 |
| "D. | 5025 NE 6th Avenue | 1,344.00 |
| "E. | 2612 SE 141st Avenue | 706.18 |
| | | $16,161.99 |
| | "Less Capital Gains Taxes | -1,169.00 |
| | "TOTAL | $15,992.99" |

Husband was also required to pay wife $1,200 for the accounting.

Husband appeals and wife cross-appeals. Both parties assign error to the portion of the decree requiring husband to pay one-half of the accounting fee and to portions of the findings, conclusions and decree regarding their rights to the non-income portions of the note and contract payments. Wife also moved to strike husband's brief, because his assignments of error did not conform to the requirements of ORAP 7.19.

When husband filed his brief, ORAP 7.19 applied only to appeals of actions at law; assignments of error were not required in equity appeals under former ORAP 7.20.[3] This is an equity appeal and the rule does not apply to husband's brief.

---

[3] ORAP 7.20 was repealed on June 1, 1982.

Both parties argue that the trial court's determination of their rights to the non-income portions of the note and contract payments was error. Husband contends that the parties intended that he retain all of the payments so that he could pay the expenses from the properties and spousal support. Wife maintains that the note and contract payments should have been divided on the basis of the parties' life expectancies and that husband should not have been able to deduct from the amount divided the property and capital gains taxes he paid.

It is clear that the term "income" as used in the PSA is open to several reasonable interpretations. The parties introduced extensive extrinsic evidence to attempt to prove their intent in 1970. Both parties testified, as did the attorney representing wife at the time the PSA was signed. Letters of negotiation leading up to the PSA and documents showing the dealings between the parties after the PSA was signed were introduced. The extrinsic evidence, however, was no less equivocal than the terms of the PSA.

■ As we said in *Main v. Howard,* 52 Or App 797, 804, 629 P2d 870 (1981):

"Although this is a suit in equity and is tried *de novo* in this court, ORS 19.125, the findings of the trial court are entitled to great weight, *Cole v. Fogel, et al,* 210 Or 257, 310 P2d 315 (1957), especially where only interested witnesses testify and the testimony is conflicting. *Adamson v. Adamson,* 273 Or 382, 541 P2d 460 (1975). * * *"

The trial court's interpretation of this ambiguous contract in light of conflicting evidence was at least as reasonable as those interpretations urged by the parties. Therefore, we hold that the trial court's basic findings of fact and conclusions of law were not erroneous: husband must reimburse wife for one-half of the net return of capital, as defined in the trial court's letter to the parties, for the five properties sold on land sale contract.

Husband argues that the trial judge erred by allowing equitable considerations present at the time of trial to influence his interpretation of the PSA. He argues that the court modified the PSA, which is impermissible. *Garnett v. Garnett,* 270 Or 102, 105, 526 P2d 549 (1974). He

bases this argument on the following statements the trial court made when discussing its letter opinion:

"* * * As I think I indicated in my opinion in this case, when I describe the property settlement as ambiguous, I think I was using a term that was kinder to everybody concerned than — Well, let's just say it was a modest description of what happened to a document which on — There is no clear-cut way of solving this problem, and I am almost inevitably driven back to equitable considerations to try and see what ought to be done. I just don't understand how these parties got into the situation that they are in. That doesn't help us get out of it, but I want to do what is consistent with the law. I want to do whatever is just and equitable to try to bail them out on a relatively equal basis."

Although we agree with husband that the proper issue before the trial court was the parties' intent in 1970, and that the equities at the time of trial were not an appropriate consideration, we do not agree that the trial court rewrote the PSA. The court reasonably interpreted an extremely ambiguous contract in a situation where much of the extrinsic evidence added to the confusion. From the findings of fact and conclusions of law, it is apparent that the trial court based its decision on the terms of the PSA and other evidence of the parties' intent in 1970.

While we agree with the trial court's basic findings of fact and conclusions of law that husband and wife should split the net return of capital from the properties sold on land sale contracts, we find that the court erred in its application of those findings and conclusions to three of the properties. The court erred in its calculations of the amounts husband owed wife for 3400 and 2612 after deducting the sums he had paid on the underlying obligations for those properties. The correct amounts are $7,199.50 for 3400 and $257.09 for 2612.[4] The court erred in its treatment of the non-income payments for 3322. The decree divides between the parties only the lump sum payment held in trust. To be consistent with its findings, conclusions and treatment of the other properties, the court should have divided between the parties all the non-income

---

[4] The formula and calculations for 3400 and 2612 are as follows:

payments on 3322 received by husband since 1970, after allowing him an offset for property taxes paid. Thus, husband owes wife $2,978.31 for 3322.[5]

■     Both parties assign as error the conclusion of law and the portion of the decree requiring husband to pay one-half of the fee for the accounting prepared by wife's former attorney. Wife correctly points out that, under the PSA, husband was wife's agent for the collection of the contract payments. As wife's fiduciary, husband had a duty to account for her portion of the payments. *See Kelley et ux v. Mallory et ux,* 202 Or 690, 704, 277 P2d 767 (1954). Husband gave wife his records of payments he received and his tax returns, leaving her the task of analyzing and organizing the data into an accounting. Husband correctly contends, however, that the portions of the "accounting" calculating rental income were irrelevant to the suit and that the portions dividing the parties' rights to non-income payments by their life expectancies was an attempt to support a novel claim for damages rather than an accounting. Therefore, the trial court properly decided to split evenly the cost of the "accounting" between the parties.[6]

Affirmed in part; reversed in part; and remanded with instructions to modify the judgment against husband by reducing it to $15,646.90.

| Property | 3400 | 2612 |
|---|---|---|
| Non-income payments received by husband | $39,843.00 | $ 4,811.00 |
| Less payments made by husband on underlying obligations | -15,444.00 | -4,296.12 |
| Net return of capital | $24,399.00 | $ 514.18 |
| Divided by 2 | 12,199.50 | 207.09 |
| Less amount husband paid wife | - 5,000.00 | --- |
| Amount husband owes wife | $ 7,199.50 | $ 207.09 |

[5] The formula and calculations for 3322 are as follows:

| | |
|---|---|
| Non-income payments received by husband | $14,563.00, |
| Less payments by husband for property tax | 8,606.39 |
| Net return of capital | $ 5,956.61 |
| Divided by 2 = amount husband owes wife | $ 2,978.31 |

[6] The decree contains a provision that the trial court will hold a proceeding to determine whether the $2,400 fee is reasonable, if the husband so requests.