Argued October 28, affirmed December 19, 1952

# EDWARDS FARMS, INC. *v.* SMITH CANNING & FREEZING CO.

251 P. 2d 133

*Carlton R. Reiter* argued the cause for appellant. On the brief were Stern, Reiter & Day, of Portland, and C. C. Proebstel, of Pendleton.

*John F. Kilkenny* argued the cause for respondent. On the brief were Kilkenny & Fabre, of Pendleton, and Raley & Raley, of Pendleton.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

LATOURETTE, J.

Plaintiff brought action against defendant for damages for alleged breach of a written lima bean contract. Defendant by equitable answer sought reformation of the contract on the ground of mutual mistake. The trial court reformed the instrument, whereupon plaintiff appeals.

The facts leading up to the signing of the contract are that the Edwards brothers, Harold and William, were interested in growing a spinach crop and contacted the defendant in the Fall of 1948. The crop was planted but resulted in failure. Thereafter discussions were had between the parties concerning the growing of a lima bean crop, which matured into a verbal agreement between them. There was no dispute but that plaintiff was to furnish the seed and grow the bean crop, and that defendant was to pay for the crop at the rate of $180 per ton. Plaintiff then purchased the seed from the defendant and planted it on or about May 10, 1949.

On or about June 17, 1949, plaintiff, desiring a written contract, approached defendant, the reason being given that it was needed for additional financing. Up to the time of the bean crop discussion, the defendant had never processed or canned anything in that community other than peas, and it had for that purpose blank forms for pea contracts. Mr. Allred, the field superintendent who had been connected with the defendant company for six years dealing in these matters, suggested that they employ the blank pea contract for the purpose, and, where the contract read "peas", "lima beans" should be substituted. Mr. Allred proceeded to make changes on the pea contract, it being his contention that the bean contract between the parties was the same in form as the pea contract. Harold Edwards protested and stated that he wanted a new written contract. This conversation was held around the noon hour, and Mr. Allred said that he would draft something for them during that period and went into his office and made some written notes, and, with this material and some dictation, his stenographer typed a written contract which was thereupon

executed by the parties. In passing, it will be noted that under the pea contract form the grower was obligated to harvest the crops.

The written contract contained a clause that the buyer (defendant) would harvest the entire crop. It is contended by the defendant that the oral agreement between the parties was that the buyer would furnish the viner, the viner operators and a cutting bar, but that otherwise the grower would harvest the crop, and that by mutual mistake of the parties the contract contained the clause that the buyer would harvest the entire crop.

Mr. Allred, Charles Wood, the manager, and Jack Cooper, an employee of the defendant corporation respectively, gave testimony which sustained defendant's theory of the case as pleaded in the cross complaint. Harold Edwards of the plaintiff corporation testified to the contrary and contended that the written contract reflected the oral agreement between the parties.

The evidence discloses that a few days before the harvest, the parties had a meeting and outlined the steps to be taken by each in the harvesting of the crop, and that on the morning of August 17, 1949, defendant was at the scene of the harvest with its equipment, and proceeded to cut down the bean vines. Shortly thereafter the plaintiff arrived with its crew and proceeded to harvest the crop, doing all things necessary in that respect, other than defendant's mechanical operation. The work continued until the afternoon of that day when plaintiff ceased harvesting, concededly because the income from the bean crop would not justify the expense it was incurring in the harvesting of the crop. The following testimony of William Edwards, taken on his deposition, which he admitted at the trial as

having been given, bore out defendant's position in regard to the harvest:

"Q. * * * Question: 'In other words you were to pay part of the harvest expense and they were to pay part of the harvest expense to get the peas [sic] to the viner? * * * Answer: 'Yes sir. And I think we lived up to all those payments. We paid off all those men that Mr. Allred told us to pay.' You made that answer?

"A. Yes sir.

"Q. All right. Question: 'And that was the understanding at the time this contract was signed, is that correct? Answer: 'Yes, I would say that.' Did you make that answer?

"A. Yes sir."

It is true that the above testimony was later weakly qualified to the extent that Edwards claimed that such understanding was had on a Saturday a few days before the harvest. It is inconceivable that defendant would agree to participate in the harvest at that time if it were not originally obligated so to do.

Plaintiff, as evidenced by certain cancelled checks in the record, paid off its harvest help without ever making demand on defendant for reimbursement. Furthermore, Mr. Edwards handed to Mr. Allred a check in payment for services of Mr. Bunch, who operated the cutter tractor. A few days after the termination of the harvest as aforesaid, plaintiff, owing defendant for the bean and spinach seed which it had theretofore procured from defendant, executed to defendant a promissory note in the sum of $1,047.31, the aggregate of which included the cost of the bean and spinach seed, less the green beans delivered to the defendant from the brief harvesting operation. No claim was made at that time that defendant owed plaintiff for the harvest expenses it had incurred nor that such amount should be deducted from the note.

Before proceeding to the legal aspects of the case, we wish to emphasize that all steps which were taken in the harvesting of the crop were in accordance with defendant's claimed oral contract, and not in consonance with the written instrument.

■ It is a well-recognized rule of law that where a written contract has been entered into between the parties the presumption is that the writing expresses the contract as made, and that it is valid and free from mistake. We have repeatedly held that evidence of mutual mistake must be clear, cogent and convincing before a writing may be reformed, but, as stated in *In re Wilkerson Estate*, 187 Or 635, 640, 213 P2d 209, such mistake may be established by a preponderance of the evidence so long as in appraising the same the trial court adheres to the canon of clear and satisfactory evidence. It was also said in that case that, "* * * the responsibility of determining whether the evidence was clear and convincing was upon him [the trial judge] * * *."

■ It is equally axiomatic that, in determining whether or not a written instrument should be reformed, courts will consider all the pertinent circumstances and facts which throw light on the intention of the parties.

■■ If we had before us for consideration only the conflicting testimony of the parties, there might be a grave question whether the evidence was so clear and convincing that a finding of a mutual mistake would be warranted, but when we have, as in this case, the actions of the plaintiff in the harvesting of the crop directly in opposition to the written contract, a strong case is made out that plaintiff was in fact under obligation to participate in the harvesting of the crop. See *De Tweede v. Barnett Estate*, 160 Or 406, 85 P2d 361.

■ It is asserted by plaintiff that defendant was guilty of such gross negligence in the execution of the contract that it should not be entitled to reformation. The argument is made that Mr. Allred, in behalf of the defendant, drew up the contract, and, therefore, the defendant cannot challenge its terms. It is true that gross negligence in some cases will preclude the relief of reformation, but this is not always so, for, as stated in *Holzmeyer v. Van Doren,* 172 Or 176, 189, 139 P2d 778, a universal formula cannot be adopted which will define the degree of carelessness which would bar a party from the right to seek equitable relief. In that case we quoted with approval from Pomeroy's Equity Jurisprudence, 5th ed., § 856b, as follows:

" 'Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby.' "

In the case of *Caine v. Powell,* 185 Or 322, 331, 202 P2d 931, we said:

"* * * This court, however, has approved the doctrine that 'each instance of negligence must depend to a great extent upon its own circumstances', and that 'even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby.' Welch v. Johnson, 93 Or. 591, 600, 183 P. 776, 184 P. 280. See, also, DeWolfe v. Kupers, 106 Or. 176, 183, 211 P. 927." See *Wolfgang v. Henry Thiele Catering Co.,* 128 Or 433, 275 P 33.

The evidence discloses that plaintiff would not be prejudiced by the reformation since it had already paid out the expense of harvesting and had terminated the harvest not because of anything that defendant had done but because the undertaking developed into a non-profitable endeavor.

■ In our opinion the facts in the instant case do not disclose that defendant was guilty of gross negligence. Mr. Allred was importuned by plaintiff to draw up a contract. He hurriedly did so in the space of an hour, and when the completed document was ready it is indicated by the evidence that he did not read it since he testified he did not know the contract obligated the defendant to harvest the entire crop until the filing of the lawsuit. That the contract was hastily drawn is evidenced by the further fact that the agreement as originally drawn provided for $80 per ton to be paid plaintiff by defendant for the lima beans. Some days later this was called to defendant's attention and Allred corrected the amount to read $180 per ton. Furthermore, the contract itself does not describe the property where the beans were to be grown, the contract in part reciting "which are grown or to be grown upon the following described land owned by seller in the County of Umatilla, State of Oregon." As before indicated, no lands were described.

The Edwards brothers contend that they read the contract before signing it, and, this being so, there was no mutual mistake, and at the most there would be a unilateral mistake on the part of defendant. If in fact they did read the written contract, it is evident that they did not read it carefully for they would have noted error in one of the most important provisions in the contract so far as they were concerned, and that is that they were to be paid $80 per ton instead of $180, the price previously agreed upon, and also that their lands were not particularly described.

The trial court heard and observed the witnesses, and we are of the opinion that its decree was correct. Affirmed.