Argued and submitted April 17, reversed and remanded in part; otherwise affirmed October 3, 2001

Diana M. FOSTER,
*Appellant,*

*v.*

Elizabeth L. GIBBONS,
*Respondent.*

98-2030; A106997

33 P3d 329

Margaret H. Leek Leiberan argued the cause and filed the brief for appellant.

Stephen D. Petersen argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

In this action arising out of a boundary dispute, plaintiff appeals from a judgment rejecting her breach of contract claims and reforming the parties' land sale contract in favor of defendant. Plaintiff assigns error, *inter alia*, to the trial court's reformation of the parties' land sale contract, arguing that defendant failed to prove by clear and convincing evidence that she was entitled to reformation. On *de novo* review, *Jensen v. Miller*, 280 Or 225, 227, 570 P2d 375 (1977), we conclude that defendant, by virtue of her gross negligence, is not entitled to reformation. Accordingly, we reverse in part and remand for further proceedings.

In 1976, defendant and her husband purchased a 5.53-acre piece of property in Columbia County. Defendant lived with her husband on the property, which contained a house and barn, from 1976 until her husband's death in 1981. After her husband's death, defendant became concerned that the house was too big for one person. Consequently, defendant made plans with her son, Frank Hughes, to have Hughes move into the house, with the understanding that defendant would place a trailer home elsewhere on the property and move into the trailer.

In 1982, defendant and Hughes took steps to partition the 5.53-acre parcel into two equally sized parcels of land. Their intent was to have one parcel that contained the house and barn, and to place the mobile home on the second parcel. To effect the partition, Hughes made some measurements and gave a drawing of the property to defendant, who then filed a partition application with the Columbia County Board of Commissioners. The Board approved the application, and ultimately the northerly parcel, containing the house, was designated tax lot 1802, while the southerly parcel, upon which defendant planned to place the mobile home, was designated tax lot 1801.

Shortly thereafter, defendant began to receive tax bills for both tax lots, 1801 and 1802. At some point between 1983 and 1985, defendant realized that, contrary to her original plan to divide the original parcel equally, the tax statements for the properties indicated that tax lot 1801 contained

2.98 acres, while tax lot 1802 contained only 2.55 acres. Defendant believed that that disparity was erroneous. Consequently, in 1986, she went to the county tax office and attempted, unsuccessfully, to have the tax assessments modified. At that point, defendant, apparently resigned to the fact that the actual partition did not comport with her expectations and that she "was stuck with" the acreage disparity, did not take any additional action to change the size of either lot or to ascertain whether the legal description for the property corresponded with her original understanding as to the location of the boundary between the two parcels. Instead, in 1988, defendant planted a row of trees along what she believed to be the boundary between the two parcels.

In 1991, plaintiff learned that defendant wanted to sell the parcel containing the mobile home. Plaintiff contacted defendant to inquire about the property. The two met, and defendant explained to plaintiff that the boundary between the parcels corresponded with a particular tree line, and that the barn, which was situated close to that boundary, fell on the northerly parcel being retained by defendant.[1] On September 24, 1991, the parties executed an earnest money agreement for the sale. That agreement indicated that plaintiff would purchase tax lot 1801, consisting of "[a]pprox. 2.55 acres," plus the mobile home and garage then situated on the property, and that defendant would finance the transaction.

To finalize the sale, defendant contacted her attorney, Ted Grove, to draft the land sale contract. While defendant's testimony is somewhat unclear, it appears that, at the time she contacted Grove, defendant remembered that her tax statements had listed tax lot 1801's acreage as 2.98 acres. Nevertheless, she provided Grove with the legal description for tax lot 1801, and Grove prepared a land sale contract

---

[1] At trial, plaintiff testified that defendant did not explain that the boundary corresponded to the tree line but, instead, pointed to a particular stump and indicated that the property began "right about here." The trial court, however, discounted the credibility of plaintiff's testimony and adopted defendant's testimony that she had identified the tree line as the boundary. While our review with respect to reformation is *de novo*, we recognize the trial judge's superior position from which to assess credibility. Consequently, we give substantial weight to the trial court's findings where, as here, those findings hinge on the resolution of conflicting testimony and the credibility of the witnesses. *Krueger v. Ropp*, 282 Or 473, 478-79, 579 P2d 847 (1978).

incorporating that legal description. The contract also contained an integration clause, which declared, in part, that the written contract "supersedes and replaces all written and oral agreements heretofore made or existing by and between the parties or their representatives insofar as the property is concerned."

Between 1991 and early 1997, the parties enjoyed a neighborly relationship. Plaintiff paid the taxes for the 2.98-acre tax lot 1801, while defendant continued to pay the taxes for tax lot 1802. In May 1997, however, plaintiff decided to purchase a new mobile home. The home she wanted was larger than the one she had purchased from defendant, so plaintiff began to measure her property to ensure that the new home's septic tank complied with various setback requirements. Based on those measurements, plaintiff learned that the property line, as described in the property's legal description, did not correspond with the line of trees initially described by defendant—and that, instead, the property was substantially larger than she expected.

Plaintiff, seeking to resolve any confusion as to their common boundary, wrote a letter to defendant. In that letter, plaintiff described the results of her measurements, and stated: "All these years I have taken it for granted that my property was where you said it was." Defendant, in response, contacted an attorney, who arranged to have Lillich, a retired person with surveying experience, visit the property and locate the disputed boundary. Lillich's investigation confirmed that the boundary was not where defendant had initially represented and revealed that the boundary, in fact, ran through the middle of the barn.[2]

In January 1998, plaintiff, believing that the dispute was resolved, made arrangements to purchase a new mobile home. She obtained tentative financing for the purchase but was told that closing could not occur until the balance remaining on her contract with defendant was fully paid. Defendant, however, conditioned her participation in the closing on plaintiff's agreement to have the original deed

---

[2] Ownership of the barn, which is old and in disrepair, is not at issue here. Plaintiff has indicated she believes that the property is worth more with the barn removed and has disclaimed any interest in the barn itself.

revised to reflect that defendant, not plaintiff, owned the area north of the tree line. Plaintiff refused to accept that revision, and the mobile home sale did not close.

Meanwhile, a second, albeit related, dispute arose. When plaintiff purchased the property in 1991, defendant gave her a nonexclusive easement over an existing driveway that provided access to plaintiff's property. From 1991 until mid-1997, plaintiff used the easement without interruption. In September 1997, apparently in response to the parties' boundary dispute, defendant blocked plaintiff's use of the easement, first with a truck and trailer and later with a gate.

In February 1998, plaintiff brought this action. Plaintiff's operative amended complaint alleged, in diffuse fashion, claims for breach of contract, specific performance, ejectment, and trespass, all of which arose from either the boundary dispute or the blockage of the easement. Plaintiff alleged, essentially, two separate breaches of contract: (1) defendant had breached the parties' land sale contract by conditioning acceptance of plaintiff's tender of final payment on modification of the property description; and (2) defendant had breached the parties' easement agreement by blocking the easement. For the first breach, plaintiff sought damages relating to appraisal costs and increased interest costs; for the second, plaintiff sought damages for the cost of constructing alternative access to her property. Plaintiff's specific performance claim paralleled the breach of contact claim and sought, variously, to (1) compel defendant to accept plaintiff's tender of final payment and to deliver a warranty deed for the property and (2) compel plaintiff to remove barriers to the easement. The ejectment claim sought to exclude plaintiff from the area that was the subject of the boundary dispute and also sought to preclude blockage of the easement. Finally, the trespass claim pertained to both the boundary dispute and the easement dispute, and sought damages for plaintiff's alleged wrongful occupancy.

Defendant answered and, as an "affirmative defense,"[3] asserted that, because of "mutual mistake," the

---

[3] Defendant's request for reformation, though styled as an "affirmative defense," is properly considered a counterclaim for reformation of the party's land sale contract. *See Klamath County 9-1-1 v. Dept. of State Police,* 116 Or App 123,

land sale contract should be reformed to correspond to the parties' alleged contemporaneous understanding of the location of the boundary between the properties. Plaintiff also asserted three counterclaims: (1) trespass, based on plaintiff's alleged wrongful occupancy of the disputed area; (2) establishment of boundary lines pursuant to ORS 105.705 to ORS 105.725; and (3) attorney fees under the parties' land sale contract.

Before trial, in December 1998, the parties entered into a stipulated order, pursuant to which defendant was required to remove the blockage to plaintiff's easement by December 28. Despite that order, defendant did not immediately remove the obstruction and, on several occasions thereafter, plaintiff's use of the easement was again blocked. Plaintiff responded by asking the court to hold defendant in contempt and to impose remedial sanctions, *see* ORS 33.105(1)(a),[4] for defendant's violation of the stipulated order resolving the parties' easement dispute.

The case was tried to the court. After trial, the court entered a judgment reforming the contract—and particularly the description of tax lot 1801—as requested by defendant.[5] Given that determination, the trial court—apparently concluding that defendant was justified in refusing plaintiff's tender of payment under the contract until plaintiff agreed to revision of the property description—rejected plaintiff's claim for breach of the land sale contract. However, and further, the court determined that defendant had breached the easement agreement and awarded plaintiff $1,600 in damages for that breach. In addition, the court determined that defendant was liable for contempt for continued blockage of the easement, in violation of the December 1998 stipulated order, from February 1 through February 12, 1999, and awarded a

---

840 P2d 751 (1992) (addressing the defendant's counterclaim for reformation); ORCP 19 B ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.")

[4] ORS 33.105(1)(a) permits a court to impose, as a remedial sanction for contempt, "Payment of a sum of money sufficient to compensate a party for loss, injury or costs suffered by a party as the result of a contempt of court."

[5] As reformed by the trial court, tax lot 1801 consisted of only 2.31 acres, while the size of tax lot 1802—previously 2.55 acres—was increased to 3.22 acres.

remedial sanction of $600 ($50 per day) for that contempt. Finally, the court awarded defendant "sixty percent (60%) of her reasonable attorney fees pursuant to the Real Estate Contract."

Plaintiff appealed. After oral argument, we determined that the trial court's original judgment did not properly dispose of all of the parties' claims. Accordingly, we issued an order, pursuant to ORS 19.270(4), giving the trial court leave to enter an appealable final judgment. On June 29, 2001, the trial court entered a final judgment. Pursuant to that judgment: (1) plaintiff prevailed on her claims for breach of contract, specific performance, and ejectment pertaining to the easement agreement; (2) defendant prevailed on her reformation "affirmative defense" and, thus, prevailed on plaintiff's claims for breach of contract and specific performance pertaining to the land sale contract, as well as plaintiff's ejectment claim pertaining to noneasement property; (3) defendant prevailed on plaintiff's trespass claim; (4) plaintiff prevailed on defendant's trespass and statutory establishment of boundary counterclaims; and (5) plaintiff prevailed on the contempt matter, as previously determined by the court. In addition, the trial court substantially revised its award of attorney fees, discarding its earlier percentage award of attorney fees and, instead, awarding defendant $5,739.90 in attorney fees as the prevailing party on plaintiff's claim for breach of the land sale contract, and awarding plaintiff prevailing party attorney fees of $2,134.50 for her contempt of court claim. Plaintiff filed a timely amended notice of appeal from that final judgment.

On appeal, plaintiff raises two assignments of error. First, the trial court erred in reforming the property description in the parties' land sale contract. Second, the trial court erred in awarding remedial sanctions for only 12 of the 30 days on which defendant allegedly violated the December 1998 stipulated order.[6]

---

[6] Initially, before our remand to the trial court for entry of a corrected judgment, plaintiff had also assigned error to the trial court's attorney fee award in its original, nonfinal judgment. In particular, plaintiff contended that the original judgment either erroneously failed to award plaintiff fees for prevailing on the contempt matter or erroneously "netted" defendant's recovery of fees and plaintiff's recovery of fees. *See Wilkes v. Zurlinden*, 328 Or 626, 984 P2d 261 (1999).

At the outset—and to "clear the decks"—we summarily reject plaintiff's second assignment regarding the duration of contempt and consequent remedial sanctions. Plaintiff argues that there is not substantial evidence to support the trial court's finding that defendant was in contempt for only 12 of the alleged 30 days of blockage of the easement in violation of the December 1998 stipulated order. *Patchett and Patchett,* 156 Or App 69, 72, 964 P2d 1114 (1998). We disagree, and affirm the trial court's judgment in that regard.

We proceed, then, to the core of the appeal—plaintiff's challenge to the trial court's reformation of the parties' land sale contract. Plaintiff asserts that defendant is not entitled to reformation because she failed to meet her evidentiary burden. In particular, plaintiff notes that a party seeking reformation on the ground of mutual mistake must prove, by clear and convincing evidence, the existence of an antecedent agreement to which the contract can be reformed, a mutual mistake, and that the party seeking reformation was not guilty of gross negligence. *Mendieta v. Division of State Lands,* 148 Or App 586, 604, 941 P2d 582 (1997).[7] Plaintiff contends that defendant failed to prove any of those requisite elements.

We need not, and do not, address plaintiff's arguments as to the alleged insufficiency of defendant's proof of an antecedent agreement or mutual mistake. Even assuming, without deciding, that defendant's proof in that regard would be sufficient and persuasive when reviewed *de novo,* we agree with plaintiff that defendant failed to establish by clear and convincing evidence that she was not guilty of gross negligence.

However, the court's final judgment, as modified, appears to obviate those concerns by including separate awards of fees, and plaintiff has not submitted any supplemental briefing challenging the modified judgment in that respect. In all events, given our determination that defendant is not entitled to reformation, *see* 177 Or App at 56, the award of fees to defendant must be reversed and remanded. *Id.* In addition, depending on the disposition on remand, of other claims (*e.g.*, plaintiff's claim for breach of the land sale contract), plaintiff's recovery of fees might be increased on remand.

[7] A party seeking reformation on the ground of unilateral mistake, rather than mutual mistake, must prove "unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party." *Jensen,* 280 Or at 228-29.

■ The term "gross negligence," at least as it is used in the reformation context, is not well defined in the case law. Certainly, not all inattentive conduct by a party seeking reformation will bar equitable relief. Rather, conduct, in order to bar reformation, must go beyond mere oversight, inadvertence, or mistake and, instead, must amount to a degree of inattention that is inexcusable under the circumstances. *Wolfgang v. Henry Thiele*, 128 Or 433, 444, 275 P 33 (1929). The inquiry is necessarily fact-specific: "[I]n this class of cases, involving mistakes, arising from an alleged want of proper diligence, the jurisdiction will in great measure depend upon the particular facts and circumstances surrounding the transaction." *Powell v. Heisler*, 16 Or 412, 415-16, 19 P 109 (1888). In other words, "gross negligence," far from being a static concept subject to mechanical application, is one that requires careful consideration of the facts to determine if the party seeking reformation is, both in light of his or her own actions and as a matter of equity, entitled to such relief. *See Edwards Farms v. Smith Canning Co.*, 197 Or 57, 62-64, 251 P2d 133 (1952).

■ ■ One final consideration bears reemphasis: Defendant, as the party seeking reformation on the basis of alleged "mutual mistake," bears the burden of proving that she was *not* grossly negligent:

> "The law is that a mistaken party is not entitled to rescission on the basis of the mistake if he or she was 'guilty of gross negligence in making the mistake.' *Gardner v. Meiling*, 280 Or 665, 675, 572 P2d 1012 (1977). It is for the mistaken party to prove the negative, that is, that he or she was not grossly negligent. *Jensen v. Miller*, 280 Or 225, 230, 570 P2d 375 (1977)." *Mariah Investments, Ltd. v. McCabe*, 163 Or App 91, 109, 986 P2d 1209 (1999), *rev den* 329 Or 651 (2000) (Landau, J., dissenting).

With those principles in mind, we turn to this case. The following facts, as established by defendant's own testimony and the testimony of her son, are central to our analysis: In 1982, defendant endeavored to partition her property into two, equally sized parcels. Defendant's son, Hughes, measured the property, and drew a map indicating the

approximate boundary between the divided parcels. Defendant used those materials to support her partition application before the county Board of Commissioners. After the Board granted defendant's application, defendant noticed that her tax statements for the partitioned properties indicated that they were unequally divided. Defendant was concerned enough to go down to the county tax office, where she was told that there was nothing that that office could do to remedy the discrepancy, and that she was "stuck with" 2.98 acres and 2.55 acres for tax lots 1801 and 1802, respectively. Finally, after defendant agreed to sell the property to plaintiff, she took the unaltered legal description for tax lot 1801 to her attorney, and he incorporated that description in the parties' land sale contract. Defendant testified that, at the time of contracting, she remembered that the southern parcel, tax lot 1801, was 2.98 acres, but apparently she thought that her attorney could rectify the acreage discrepancy at that point. Defendant testified that she read the contract, but she apparently gave no thought to the correctness of the legal description.

We recognize that a party's failure to read and understand a contract, by itself, will generally not constitute gross negligence sufficient to bar reformation. *Wolfgang*, 128 Or at 445. We further recognize that the mere fact that defendant's attorney drafted the parties' contract is, by itself, similarly insufficient. *Edwards Farms*, 197 Or at 63. But here, defendant did not simply fail to understand the effect of her written contract with plaintiff. *See L.B. Menefee Lumber Co. v. Gamble*, 119 Or 224, 232, 242 P 628 (1926) (parties contracting at arm's-length, while not in a position of trust, nevertheless have a duty to learn and know contract's contents before they sign and deliver it). Rather, defendant knew that, according to tax records, the legal description of lot 1801 encompassed 2.98 acres, and, thus, did not equally divide lots 1801 and 1802—and, notwithstanding that knowledge, defendant gave her attorney a copy of that legal description to incorporate into the land sale contract. Under those circumstances, defendant's failure to investigate and resolve any alleged discrepancies in the legal description, and her willingness to proceed with the sale without modifying the legal description, constitutes gross negligence sufficient to

bar reformation. *See In re Webster's Estate*, 74 Or 489, 495, 145 P 1063 (1915) (party seeking equitable relief must exercise reasonable diligence in asserting claim after learning facts that would put a person of ordinary intelligence on notice).

We note, moreover, that other equitable considerations militate against reformation. The description of lot 1801, as reformed by the trial court at defendant's request, encompassed 2.31 acres. As noted, before entering into their land sale contract, the parties executed an earnest money agreement that described the property to be sold as consisting of approximately 2.55 acres. Defendant did not, at that time, alert plaintiff to any possible discrepancies. As noted, thereafter, for roughly six years between 1991 and 1997, plaintiff paid taxes on 2.98 acres, including the disputed area. Again, defendant voiced no objection and, instead, formally claimed "mutual mistake" only after plaintiff initiated this action in February 1998. In those circumstances, reformation would be inequitable. *Edwards Farms*, 197 Or at 63 (balance of equities includes consideration of whether the party against whom reformation was sought would be harmed by reformation).

We thus conclude that the trial court erred in determining that defendant was entitled to reformation of the land sale contract's description of lot 1801. That holding, in turn, eliminates the ostensible premise of the trial court's entry of judgment in favor of defendant on plaintiff's claims for breach of the land sale contract and specific performance of the land sale contract, as well as plaintiff's claims for ejectment and trespass pertaining to the disputed, noneasement property. Similarly, that holding eliminates the predicate for the trial court's award of attorney fees to defendant under the parties' land sale contract. However, other issues of liability or damages may remain with respect to those claims and, concomitantly, the parties' entitlement to attorney fees under the land sale contract. Consequently, we reverse the trial court's judgment for defendant on those claims and remand for further proceedings.

Judgment for defendant on counterclaim of reformation of land sale contract reversed; judgment for defendant on plaintiff's claims for breach of land sale contract, specific performance of land sale contract, ejectment from noneasement property, and trespass on noneasement property, and award of contract-related prevailing party attorney fees to defendant reversed and remanded for further proceedings; otherwise affirmed.