BALMER, J.
**399 This case requires us to consider and apply the legal standard for the reformation of a contract to include a term that all parties had intended, but that one of the parties, by mistake, had failed to include in the written agreement. The trial court reformed the contract to include the term, finding that the mistake "was easily missed," and that the "evidence is clear that all parties intended" the term to be included. The Court of Appeals reversed, concluding that reformation is permissible only if the party seeking the remedy demonstrates that it was not "grossly negligent," and holding that the facts in this case did not meet that standard. Troubled Asset Solutions v. Wilcher , 291 Or. App. 522, 422 P.3d 314 (2018). For the reasons explained below, we conclude that the trial court did not err in reforming the contract to express the parties' agreement. Accordingly, we reverse in part the decision of the Court of Appeals and remand the case to that court for further proceedings.
I. FACTUAL AND PROCEDURAL HISTORY
We take the facts from the pleadings and the trial court record.[1] Sierra Development, LLC (Sierra), a real estate development company in which both Wilcher and his son were involved, borrowed approximately $5 million from The Mortgage Exchange (MEX), the predecessor in interest of plaintiff Troubled Asset Solutions, LLC (TAS). Wilcher and his son signed a promissory note for the loan as members of Sierra; Wilcher, his son, and his son's wife also signed the promissory note as "individual guarantor(s)." The promissory note stated that it was secured by a trust deed on Sierra Heights, the property owned by Sierra that was to be developed with the loan proceeds, and also by "[a]dditional security" that was "required on this loan." The promissory note identified as that "additional security" three other properties owned personally by Wilcher, one of which was described as "15 (+/-) acres including **400 residence, Tax Lot 700, Klamath County, Oregon valued at $450,000."[2]
The same three individuals that signed the promissory note also executed the critical *883 document in this case: a deed of trust identifying more than a dozen separate parcels of land as collateral for the loan. The trust deed described the properties that would be subject to the trust and security for the loan as "SIERRA HEIGHTS, Klamath Falls, OR plus additional collateral in Keno, OR," and the record makes clear that the "Keno" property included Wilcher's residence, which he owned personally. The trust deed then listed the various lots that comprised the Sierra Heights development and also listed as "additional security" the properties owned personally by Wilcher, including the 15-acre property with his residence. Exhibit A to the trust deed contained metes and bounds descriptions of the properties that were collateral for the loan, including a legal description of the property with the residence. Other documents and testimony at trial confirm that the parties clearly intended that the loan be secured not only by the properties owned by Sierra, but also by properties owned individually by Wilcher, including the property with his residence. The signature block of the trust deed identifies, under the designation "Corporate or Partnership Grantors," "SIERRA DEVELOPMENT, LLC." Wilcher and his son signed on signature lines that set out their names and the designation "Member." Wilcher's son's wife also signed the deed of trust. Both the trust deed and the promissory note had been prepared by MEX.
The dispute in this case arises because, although the trust deed identifies the collateral as including the properties owned personally by Wilcher and contains legal descriptions of those properties, the only name that appears in the space labeled "GRANTOR" on the first page of the trust deed is Sierra. Wilcher, individually, is not identified as a "grantor" in the trust deed. After the loan went into default, TAS initiated foreclosure proceedings against one of the properties owned personally by Wilcher ("the property").
**401 Following unsuccessful settlement efforts, Wilcher brought a quiet title action in Klamath County Circuit Court seeking a declaration that the trust deed did not grant any interest in the property to TAS. That action was later dismissed for improper venue. TAS then filed an action for forcible entry and detainer against Wilcher in Washington County Circuit Court, seeking to remove him from the property. Wilcher renewed his quiet title claim in a separate action in that court, and TAS filed a counterclaim seeking to reform the trust deed to add Wilcher, individually, as a grantor.
The two actions in Washington County were consolidated for trial, and the trial court ultimately entered a judgment granting TAS's claim for reformation and related relief. The trial court found that the parties to the loan transaction knew and intended that Wilcher's individually owned property, including his residence, would be subject to the trust deed and collateral for the loan. That property was listed as collateral in the trust deed and also in the promissory note, which, as noted, Wilcher had signed both individually and as a member of Sierra. The trial court also found that the error in the trust deed in failing to list Wilcher individually as a "grantor" was "easily missed." The trial court further observed that, because some of the claims before it were equitable in nature, it was required to do what was "fair." It also found that, since signing the deed, and prior to the present litigation, Wilcher had consistently behaved as though the property was encumbered. The trial court ordered reformation of the trust deed to include Wilcher, individually, as a grantor of the property.[3]
On appeal, Wilcher asked the Court of Appeals to review the record de novo and argued that the trial court had erred in reforming the trust deed, because TAS had **402 failed to prove any of the elements necessary for reformation. He also raised several other assignments of error. The Court of *884 Appeals denied the request for de novo review, but nevertheless agreed with Wilcher that the trial court had erred in reforming the trust deed. Troubled Asset Solutions , 291 Or. App. at 525, 535, 422 P.3d 314. The Court of Appeals took its test for when a court can reform a written agreement from this court's opinion in A&T Siding, Inc. v. Capitol Specialty Ins. Corp. , 358 Or. 32, 43, 359 P.3d 1178 (2015) (citing Jensen v. Miller , 280 Or. 225, 228-29, 570 P.2d 375 (1977) ). That test identifies three requirements: (1) "an antecedent agreement to which the contract can be reformed;" (2) a mutual mistake in the contract (or a unilateral mistake by one party with inequitable conduct by the other party); and (3) the absence of "gross negligence" by the party seeking reformation. A&T Siding, Inc. , 358 Or. at 43, 359 P.3d 1178.[4] The Court of Appeals considered only the third requirement, determining that it was dispositive. Troubled Asset Solutions , 291 Or. App. at 532, 422 P.3d 314. It held that TAS had failed to prove "lack of gross negligence" on the part of MEX and therefore was not entitled to reformation of the trust deed to express the parties' agreement that the property was subject to that contract. Id. at 533-35, 422 P.3d 314. The court concluded: "[N]o factfinder could conclude that failing to name Wilcher as a grantor was 'mere oversight, inadvertence, or mistake.' " Id. at 534, 422 P.3d 314 (quoting Foster v. Gibbons , 177 Or. App. 45, 54, 33 P.3d 329 (2001) ). We allowed review to consider the meaning and application of the "gross negligence" requirement when a court is asked to exercise its equitable powers to reform a contract.
II. ANALYSIS
On review, TAS makes two related arguments. First TAS asserts that the Court of Appeals erred in articulating and applying the "gross negligence" requirement to the facts here by failing to consider, as part of that determination, whether the balance of equities, including prejudice to either party, favors reformation. TAS argues that this **403 court's cases always have interpreted the gross negligence element of the reformation test to include consideration of broader equitable principles, and that Court of Appeals erred by departing from those cases here, as well as by failing to credit the trial court's express and implicit findings that demonstrated the absence of gross negligence on the part of MEX. Second, TAS argues that this court should clarify and restate (if not rename) the "gross negligence" standard, consistent with this court's cases on contract reformation and the Restatement (Second) of Contracts , to emphasize underlying equitable principles, including the presence or absence of prejudice, good faith, and unjust enrichment.
Wilcher responds that "gross negligence" has been adequately defined by the Oregon courts to mean "heightened negligence" and that it does not incorporate other equitable principles. Wilcher asserts that while a party to a transaction is not grossly negligent for failing to read a document, "a party is grossly negligent and reformation will be barred if it fails to obtain information readily available; thus, a party must take reasonable measures to be informed." (Emphasis in Wilcher's brief in this court.) He argues that the Court of Appeals correctly applied the "gross negligence" standard to the facts of this case. He also argues that the trial court found neither an antecedent agreement or a mutual mistake, and that the record would not support such findings.
As we will explain, although Wilcher is not necessarily inaccurate in quoting some of the formulations of the "gross negligence" requirement, he advances a cramped and abstract interpretation of that requirement that is inconsistent with our case law. We conclude that the Court of Appeals erred as a matter of law in its application of that standard by focusing only on the conduct of MEX and its agents and by failing to consider the equities of the case, notably whether anyone would be prejudiced by reformation of the contract. We also agree with TAS that it is appropriate to reconsider the utility of the *885 "gross negligence" standard, which we do below.[5] **404 A. Preliminary Matters
We begin by revisiting the Court of Appeals' decision and the applicable standard of review. As the Court of Appeals noted, having declined Wilcher's request for de novo review, the court was left to review the trial court's factual findings "to determine whether there is any evidence in the record to support them, and its legal conclusions for legal error." Troubled Asset Solutions , 291 Or. App. at 525, 422 P.3d 314. Here, the Court of Appeals did not identify any specific misunderstanding of the relevant law on the part of the trial court. Rather, it based its decision solely on its view that the evidence at trial was insufficient to support the trial court's conclusion that the mistake was excusable and therefore could be the basis for reformation. Id. at 533, 422 P.3d 314 ("there was insufficient evidence in the record for the court to find that the mistake was excusable under the circumstances"). Yet under the applicable standard of review, the Court of Appeals was obligated to "view the evidence in the light most favorable to the [trial] court's disposition to determine if it supports the court's legal conclusions." Dept. of Human Services v. S.J.M. , 364 Or. 37, 40, 430 P.3d 1021 (2018) (citing, inter alia , ORS 19.415 ). As this court recently stated in reviewing a trial court's legal conclusion based on that court's assessment of facts presented at trial:
"[W]e are bound by the court's factual findings as long as the record contains evidence that supports those findings. To the extent that the trial court did not explicitly state its factual findings, we assume that it found facts consistent with its conclusion (assuming, again, that the evidence in the record would support such findings)."
Crimson Trace Corp. v. Davis Wright Tremaine LLP , 355 Or. 476, 489, 326 P.3d 1181 (2014). We will return to the standard of review again below.
**405 Before turning to the central dispute between the parties over the meaning and application of the gross negligence standard, however, we briefly address the two other elements that a party must prove to obtain reformation of a contract: antecedent agreement and mistake. Although the Court of Appeals did not decide those issues, Wilcher briefed them in this court and they are intertwined with the gross negligence issue, so in the interest of judicial and litigant economy we will consider them. The trial court found that there was an antecedent agreement that the property owned by Wilcher personally and described in the trust deed, including the parcel with Wilcher's residence, was intended by the parties to be collateral for the loan and that the parties intended Wilcher, personally, to be named as a grantor in the trust deed. It also found that the failure to include Wilcher as a grantor in that document was a mistake that no party caught-indeed, that Wilcher had been under the impression that he was signing the trust deed in his personal capacity. Although Wilcher argues that there was no evidence to support those findings, we disagree-the trial court's findings on those elements, discussed throughout this opinion, were amply supported by the record and must be upheld under the applicable standard of review. This was a classic example of a mutual mistake, where the written document failed accurately to express the agreement of the parties.[6]
*886 B. The Court of Appeals' Determination of Gross Negligence
The Court of Appeals recognized that the term "gross negligence," at least as used in the contract reformation context, is "not well-defined," that it requires consideration of all the facts to determine whether the party seeking **406 reformation is entitled to relief, based on the equities, and that in order to bar equitable relief, a party's conduct " 'must go beyond mere oversight, inadvertence, or mistake and, instead, must amount to a degree of inattention that is inexcusable under the circumstance.' " Troubled Asset Solutions , 291 Or. App. at 532-33, 422 P.3d 314 (quoting Foster , 177 Or. App. at 54, 33 P.3d 329 ). That standard " 'requires careful consideration of the facts to determine if the party seeking reformation is, both in light of his or her own actions and as a matter of equity , entitled to such relief.' " Id. (emphasis added). But the Court of Appeals strayed from that standard in this case.
The crux of the Court of Appeals' legal conclusion was its agreement with Wilcher's argument that MEX, TAS's predecessor in interest, "had access to all of the information necessary to avoid its mistake, and its failure to obtain or utilize that information constituted gross negligence." Troubled Asset Solutions , 291 Or. App. at 532, 422 P.3d 314 (internal quotes omitted). The court noted that MEX's chief executive officer, Wilson, agreed that, although the trust deed and other closing documents were prepared by one of his most experienced employees, the trust deed contained a mistake in that it failed to include Wilcher as a grantor. Id. at 533, 422 P.3d 314. Wilson also had assumed that the title company would review the documents and catch any errors before closing.[7] Id. The Court of Appeals determined that MEX "had all the pertinent information available to it before drafting the trust deed * * *." Id. at 534, 422 P.3d 314. The court distinguished cases where it had held that "a party's failure to read a document, by itself, will generally not constitute gross negligence sufficient to **407 bar reformation," and asserted that "the omission of a crucial term when drafting a trust deed can rise to the level of gross negligence." Id. (internal quotation marks and citation omitted; emphasis in Troubled Asset Solutions ).
The Court of Appeals essentially viewed as dispositive MEX's conduct in making a drafting error regarding an important contract term when it had "access to all of the information necessary to avoid the mistake." Id. In those circumstances, it concluded, "no factfinder could conclude that failing to name Wilcher as a grantor was 'mere oversight, inadvertence, or mistake.' " Id. at 534, 422 P.3d 314 (quoting Foster , 177 Or. App. at 54, 33 P.3d 329 ). The court did not discuss any potential prejudice to TAS, Wilcher, or others in connection with its analysis of the "gross negligence," nor did it balance any other equitable considerations. As Wilcher describes the Court of Appeals decision in his brief, that court viewed "gross negligence" as meaning simply "heightened negligence," and *887 as not incorporating "a variety of equitable principles." We return to the Court of Appeals decision after reviewing our cases that articulate and apply the "gross negligence" standard.
C. The Gross Negligence Standard
This court first used the term "gross negligence" in connection with contract reformation by courts of equity in Lewis v. Lewis , 5 Or. 169, 174 (1874), where we placed it squarely in the traditional equitable context of preventing injustice and advantage, while protecting intervening rights:
"[T]he class of cases wherein courts of equity interfere to correct mistakes are said to be those where the mistake is of so fundamental a character that the minds of the parties have never in fact met, or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff either in falling into error or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed in statu quo. But even in cases like these it is said that equity will interfere in its discretion, in order to prevent intolerable injustice. The prevention of intolerable injustice appears to be the cause which, according to this authority, impels the court to grant relief."
**408 (Emphasis in original; citation omitted.) We emphasized the importance of the absence or presence of prejudice as part of the absence of gross negligence requirement in contract reformation in another early case, Powell v. Heisler , 16 Or. 412, 19 P. 109 (1888). We noted that the result in such cases will be fact dependent, and we quoted Pomeroy's treatise on equity jurisprudence to underscore that " 'even clearly established negligence' " may be insufficient to deny reformation " 'if it appear that the other party has not been prejudiced thereby.' " 16 Or. at 416, 19 P. 109 (quoting John N. Pomeroy, 2 A Treatise on Equity Jurisprudence , § 856, 322 (1st ed. 1886)).
Other reformation cases similarly have highlighted the importance of whether the other party to the transaction or a third party would be prejudiced by reformation. In Wolfgang v. Henry Thiele Catering Co. , 128 Or. 433, 275 P. 33 (1929), this court affirmed reformation of a written contract to change a particularly important-but erroneous-word. The court found that changing the word so that the contract accurately reflected the parties' agreement would not cause any prejudice: "no element of estoppel is present; no bona fide purchaser, without notice, has become interested in the restaurant property." 128 Or. at 447, 275 P. 33. Summarizing the law on this issue, this court a few years later concluded: "Some mistakes prejudice no one except those who commit them, and therefore, cancellation will prejudice no one. In such a case a considerable degree of carelessness can be tolerated." Holzmeyer v. Van Doren , 172 Or. 176, 189, 139 P.2d 778 (1943).
The clearest application of that principle is found in Edwards Farms v. Smith Canning Co. , 197 Or. 57, 63, 251 P.2d 133 (1952). In that case, the defendant in a breach of contract action argued that the contract should be reformed based on a mutual mistake. Id. at 58-59, 251 P.2d 133. The plaintiff-a farm run by two brothers-and the defendant had made an oral agreement that the plaintiff would grow and harvest a crop of lima beans, and sell the beans to the defendant at $180 per ton. Id. at 59-61, 251 P.2d 133. Later, the plaintiff requested that the agreement be reduced to writing, and two employees of the defendant quickly drafted a contract. Id. at 59-60, 251 P.2d 133. They did a notably sloppy job: the price at which the beans were to be sold was misstated as $80 per ton, the contract **409 specified that the beans were "to be grown upon the following described land owned by the seller" but never described any land, and the contract required the "buyer"-the defendant-rather than the grower-the plaintiff-to harvest the crop. Id. at 60, 64, 251 P.2d 133. Those errors were apparently the product of the short timeframe in which the contract was drafted, and the failure of the employee who dictated the contract to have read it. Id. at 64, 251 P.2d 133. The price error was corrected a few days later, but the requirement that the defendant harvest the crop became the basis *888 for the plaintiff's lawsuit, and is the term that the defendant asked to be reformed. Id.
Unsurprisingly, the plaintiff argued that reformation was barred by the defendant's gross negligence in preparing the contract. Id. at 63, 251 P.2d 133. Citing Pomeroy and Holzmeyer , this court explained, "a universal formula cannot be adopted which will define the degree of carelessness which would bar a party from the right to seek equitable relief." Id. Thus, before looking at whether the defendant had been sufficiently negligent so as to bar reformation, the court first determined "that plaintiff would not be prejudiced by the reformation * * *." Id. Having so concluded, the court excused the defendant's considerable oversights by noting that "[the defendant's employee] was importuned by plaintiff to draw up a contract. He hurriedly did so in the space of an hour, and when the completed document was ready it is indicated by the evidence that he did not read it * * *." Id. at 64, 251 P.2d 133. Naturally, those facts do not suggest that negligence was in short supply. The court instead took them to show that the error was an honest one that, in light of an absence of prejudice, did not amount to gross negligence, in the specialized sense in which that term is used in our reformation jurisprudence. Although Edwards Farms involved a contract that was "hastily drawn," id. at 64, 251 P.2d 133, we do not read that case to set up a special exemption for such documents. Rather, Edwards Farms ' insistence on a sliding scale approach to gross negligence brings home that, where there is no prejudice, "a considerable degree of carelessness can be tolerated." Holzmeyer , 172 Or. at 189, 139 P.2d 778.
Those cases teach that whether a party's mistake is so inexcusable as to constitute "gross negligence" and thus **410 to bar reformation is not simply a matter of the level of carelessness of the party now seeking reformation, as the addition of the adjective "gross" to the noun "negligence" might otherwise suggest. Contrary to Wilcher's contention, gross negligence does not simply mean "heightened negligence." Rather, whether the error is "inexcusable" and can constitute gross negligence will depend in substantial part on the equities, including whether the parties acted in good faith and whether the other party to the contract or an innocent third party, such as bona fide purchaser, will be prejudiced. And that approach is consistent with other authorities. Indeed, the Restatement (Second) of Contracts section 157 eschews the term gross negligence as "not well defined." Restatement (Second) of Contracts § 157 comment a (1979). Instead, in discussing "the effect of fault of [the] party seeking relief" when a written contract mistakenly fails to express the actual agreement of the parties, the Restatement focuses on good faith:
"A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation *** unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing."
Id. See also Richard A. Lord, 27 Williston on Contracts § 70.49, 347-48 (4th ed. 2003) (reformation appropriate under "gross negligence" standard if party "is entitled to such relief" based on consideration of facts "both in light of personal action taken and as a matter of equity"). Similarly, in Pioneer Resources, LLC v. D. R. Johnson Lumber Co. , 187 Or. App. 341, 342, 68 P.3d 233 (2003), the Court of Appeals exhaustively reviewed its own and this court's reformation cases. The court observed that the concept of "gross negligence" "is innately circumstantial and elastic," and after examining earlier cases, concluded:
"[T]he determination of 'gross negligence' is ultimately grounded in the equitable principles underlying reformation. So understood, 'gross negligence' in this context connotes the result of a balancing of equities ***."
Id. at 384, 68 P.3d 233.
**411 D. Application of the Gross Negligence Test
Having reviewed some of the key cases explaining and applying the "gross negligence" element of the equitable remedy of contract reformation, we return to the Court of Appeals' decision in this case. As discussed earlier, that court relied heavily on *889 the fact that MEX had access to the information necessary to avoid the mistake and yet failed to do so. But that fact merely indicates that MEX may have been negligent. Our cases from 1874 to the present stress the importance of considering whether reformation would prejudice the other party to the transaction or a third party, as well as whether other equities may favor one party or the other. Yet nothing in the Court of Appeals' opinion suggests that it gave any consideration to prejudice or to other equitable principles. That was legal error.
Aside from the general requirement that prejudice and other equitable matters be considered, cases from this court are directly responsive to specific arguments that Wilcher raises. It is certainly true, for example, that the fact that a party has the "information available" to avoid a drafting mistake, yet still makes the mistake, is relevant to determining whether the mistake is excusable or not. Yet Wilcher effectively argues that that fact is a defense to a reformation action-a position that this court explicitly rejected over 130 years ago. In Powell , the party seeking to avoid reformation argued that "if [the party seeking reformation] possessed the means of information, or by the exercise of reasonable diligence could have obtained the knowledge, the court will not relieve him." 16 Or. at 415, 19 P. 109. This court disagreed: "But we think in this class of cases, involving mistakes, arising from an alleged want of proper diligence, the jurisdiction will in a great measure depend upon the particular facts and circumstances surrounding the transaction." Id. at 415-16, 19 P. 109. The court went on to quote Pomeroy's treatise, in a manner particularly relevant here: " '[E]ven a clearly established negligence may not of itself be sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby.' " Id. at 416, 19 P. 109 (quoting Pomeroy, 2 A Treatise on Equity Jurisprudence § 856 at 322).
**412 The Court of Appeals also emphasized that "MEX employees drafted and then executed the trust deed without ensuring the accuracy of a crucial term in the document * * *." Troubled Asset Solutions , 291 Or. App. at 534, 422 P.3d 314. As noted previously, the court drew a sharp distinction between a party that makes a mistake in drafting a document and one that makes a mistake in not reading a document that the party then signs. Id. That distinction is not drawn sharply in our cases. A century ago we observed that "the failure of a complainant to read an instrument" was not "conclusive evidence, as a matter of law, that the mistake was due to his negligence." Welch v. Johnson , 93 Or. 591, 601-02, 183 P. 776 (1919). Yet the operative facts in Welch not only involved failure to read a document, but also involved a party's drafting error: "The deed which the plaintiff seeks to have reformed was prepared in his office by his stenographer." Id. at 598, 183 P. 776. The court nevertheless concluded that "[i]f, as the trial court expressly found, the assumption clause was inserted in the paper 'by and through a mistake or oversight of the scrivener, and without the knowledge or consent of either the grantor or grantee,' [the plaintiff] is entitled to a reformation of the deed * * *." Id. at 600, 183 P. 776. Although the existence of negligence attributable to the party seeking reformation was raised, this court again cited Pomeroy's principle that even clear negligence would not bar relief in the absence of prejudice. Id. at 600-01, 183 P. 776 ; see also Edwards Farms , 197 Or. at 63, 251 P.2d 133 (affirming reformation of contract; although the party seeking reformation had prepared the contract with the erroneous term, the other party "would not be prejudiced by the reformation").
Neither the fact that MEX had the "information available to it" nor the fact that it drafted the trust deed-or anything else identified in the Court of Appeals' opinion or by either party-suggests that the failure to identify Wilcher as a grantor in the trust deed was anything other than a careless mistake, of the type that we never have found to bar reformation absent prejudice to the other party. The Court of Appeals quoted and relied on its decision in Murray v. Laugsand , 179 Or. App. 291, 39 P.3d 241 (2002), regarding a party's failure to obtain available information about a transaction. However, that case explicitly recognized **413 that reformation is common, even if the party seeking *890 reformation "failed to detect objectionable content in a legal document," when "both parties were mistaken about what boiled down to a scrivener's error." Id. at 307, 39 P.3d 241. That was the case here. The Court of Appeals never explained why it considered MEX's error to demonstrate " 'a degree of inattention that is inexcusable under the circumstance." Troubled Asset Solutions , 291 Or. App. at 533, 422 P.3d 314 (quoting Foster , 177 Or. App. at 54, 33 P.3d 329 ), rather than a "scrivener's error" or "excusable neglect." And nothing in the record suggests any basis for doing so.
Conversely, the Court of Appeals rejected TAS's argument that, because the MEX employees who handled the transaction "were highly qualified, they necessarily used 'reasonable care to prepare the loan documents properly.' " Troubled Asset Solutions , 291 Or. App. at 532, 422 P.3d 314. The Court of Appeals was justified in its skepticism, as far as it goes. Using qualified lawyers or accountants or real estate professionals, of course, does not guarantee that the documents that they prepare will be error-free or that a party might not be adversely affected by any errors that might be made. And yet, using "highly qualified" personnel for a major real estate transaction is ordinarily the reasonable course and supports the argument of a party seeking reformation that it was not negligent at all, let alone grossly negligent, when a mistake is made in one of the transaction documents. Here, according to Wilson, the CEO of MEX, whom the trial judge found credible, the employee responsible for the trust deed had worked for Wilson for thirty-five years, had prepared over five hundred sets of loan documents, and Wilson had never previously found errors in her documents.[8] Those facts, which the trial judge was entitled to credit, support the conclusion that there was no "inexcusable inattention," either on the part of MEX or Wilson in designating a **414 qualified employee to oversee the preparation of the documents, or on the part of the employee who prepared the trust deed.
Combined with the Court of Appeals' suggestion that a party responsible for a drafting error will find it difficult to prove lack of gross negligence, the court's comments on using qualified personnel suggest that it would view any substantive mistake by the party that prepared the documents, or an agent acting on that party's behalf, as likely to constitute gross negligence attributable to that party. Such a standard would dramatically alter the landscape of contract reformation by collapsing gross negligence into ordinary negligence, as well as explicitly jettisoning the prejudice and equitable considerations inquiry that we have discussed at length above. That would eliminate many cases where reformation is appropriate, because the party must first show mistake-and mistake usually presupposes negligence of some kind, which would doom the reformation action at the outset. See Restatement § 157 comment a ("The mere fact that a mistaken party could have avoided the mistake by the exercise of reasonable care does not preclude * * * reformation * * *. Indeed, since a party can often avoid a mistake by the exercise of such care, the availability of relief would be severely circumscribed if he were to be barred by his negligence.").
Finally, the Court of Appeals dismissed the trial court's statement that the "mistake was easily missed," stating that the trial court otherwise "made no explicit findings regarding whether MEX was grossly negligent in drafting the trust deed ***." Id. at 533. That is not an entirely charitable reading of the trial court's decision. Read in context, the trial court's reference to the drafting error as "easily missed" articulated that court's conclusion that MEX may have been negligent, but that the error was "excusable neglect" not rising to the level of *891 gross negligence. The statement comes in a paragraph of the letter opinion where the court cites Jensen , which set out the requirements for reformation as an antecedent agreement, mistake, and absence of gross negligence, and where the trial court also finds that TAS proved the other two requirements. There is no **415 doubt that the trial court examined the conduct of the parties and also considered the equities-including reaching a result that the court believed was "fair"-when it concluded that MEX's conduct did not constitute gross negligence. Moreover, under the standard of review discussed above, the Court of Appeals was bound by the implicit, as well as the explicit, factual findings of the trial court (if supported by the evidence) that were the basis for the trial court's legal conclusion regarding gross negligence. See Crimson Trace Corp. , 355 Or. at 489, 326 P.3d 1181 (stating that standard). Here, that conclusion was well-supported, based on Wilson's testimony about how the documents were prepared as well as the trial court's own examination of the loan documents and trust deed. Because MEX's conduct in preparing the trust deed, although perhaps negligent, did not amount " 'to a degree of inattention that is inexcusable under the circumstances ,' " the trial court did not err in concluding that it was not gross negligence. Pioneer Resources , 187 Or. App. at 374, 68 P.3d 233 (quoting Foster , 177 Or. App. at 54, 33 P.3d 329 ) (emphasis in Pioneer Resources ).
E. Reconsideration of the Gross Negligence Standard
As we noted at the outset, TAS urges us to abandon the term "gross negligence" because it is not helpful in determining the kind of conduct that will preclude a party from obtaining equitable relief through the reformation of a contract to reflect the parties' actual agreement. TAS points to the Restatement (Second) of Contracts , which replaces the concept of gross negligence with considerations of good faith and fair dealing.[9]
Wilcher responds that the Restatement approach appears to inject standards regarding "good faith" and "fair dealing," which are used in the Uniform Commercial Code § 1-203 but have never been part of Oregon reformation cases. It is true that the Oregon cases have used terms such as "prejudice," "injustice," and "unclean hands," rather than **416 "good faith" and "fair dealing," but there is certainly overlap in the concepts, and the broad principles of equity can include assessment of the mental states of the parties and the overall fairness of their dealings with one another.
Although we see little wrong with the considerations identified in the Restatement- and we agree with TAS and the Court of Appeals that "gross negligence" is "not well defined"-we decline to reject all use of the term that we first used in 1874. Our cases always have read that term to incorporate the consideration of the equities of reforming a contract, including whether reformation would cause prejudice to the other party to the contract or to an innocent third party. And our cases also have examined the specific circumstances related to the contract-the parties' knowledge, intent, and reliance, among the myriad of other details that will help a court balance the equities. Imperfect as the term "gross negligence" may be, understood as we have applied it here and in cases going back more than a century, we believe it is sufficient to guide courts of equity in determining whether reformation is appropriate in a given case. Accordingly, we decline to eliminate that standard in favor of the Restatement approach, although we doubt that there would be many cases decided differently under the two standards.
III. CONCLUSION
We return to the facts and to the trial court's decision. The record supports the trial court's conclusion that the trust deed should be reformed to include Wilcher, personally, as a grantor, as to the properties *892 identified in the trust deed that he personally owned. Evidence in the record supports the trial court's explicit and implicit factual findings of the requirements for reformation of a contract: antecedent agreement, mutual mistake, and absence of gross negligence. Both parties understood and agreed that Wilcher's personal properties were part of the collateral for the loan to Sierra; the trust deed contained a mutual mistake in that it did not include him, personally, as a grantor. The mistake "was easily missed," and the record indicates no fraud, misrepresentation, or other improper conduct by either party leading up to the preparation of the documents or the **417 closing of the transaction.[10] Correction of the error did not prejudice Wilcher or anyone else-Wilcher does not argue that he took any actions in reliance on the misdescription in the trust deed; the trial court found, based on evidence in the record, that "Wilcher's behavior after he signed the Trust Deed was consistent with his understanding that his property was encumbered."
On appeal, the Court of Appeals declined to review the case de novo. It nevertheless reversed the trial court, determining that MEX had the information it needed to avoid the drafting error that it made and was not under any time constraints. In contrast to the trial court, however, the Court of Appeals failed to consider the equities, as required by our cases that set out the absence of gross negligence requirement. Such consideration would have identified the lack of prejudice to Wilcher if the trust deed was reformed and the harm to MEX's successor in interest, TAS, if the trust deed was not reformed. That was legal error. On this record, and under the appropriate standard of review, we affirm the trial court's ruling that the elements of reformation were satisfied, such that it was appropriate for the trial court to reform the trust deed to include Wilcher as a grantor of the property that he owned personally that is identified in the trust deed.
Because the Court of Appeals reversed the trial court's decision reforming the trust deed, it did not address other assignments of error asserted by Wilcher. We remand to that court to consider those assignments of error in the first instance.
The decision of the Court of Appeals is reversed in part. The case is remanded to the Court of Appeals for further proceedings.

The parties review the facts in detail, as did the courts below, from the execution of the relevant documents to post-foreclosure settlement efforts. We set out only the facts necessary to reach the legal questions we resolve in this opinion.

The "15 (+/-) acre property," which is the subject of this dispute, consists of three separate parcels-one parcel with Wilcher's residence and two adjoining parcels.

The trial court also made findings of fact as to the conduct of the parties after Sierra defaulted on loan, including that Wilcher had waived any claim that his individually owned property was not subject to the trust deed, that he was estopped from asserting that TAS was not entitled to foreclose on that property, and that he was not credible. Because we conclude that TAS proved that MEX was not grossly negligent when it prepared the trust deed that mistakenly omitted Wilcher's name as a grantor, we need not rely on the trial court's conclusions regarding waiver, estoppel, or other legal theories.

A&T Siding, Inc. accurately summarized the reformation standard articulated in earlier cases. However, that case did not address, explain, or apply the "gross negligence" requirement because the issue there was a mistake about the legal effect of a contract term, as to which the "equitable remedy of reformation is not available." 358 Or. at 47, 359 P.3d 1178.

In this opinion, we use the term "gross negligence" in the specialized way the term has been used by courts of equity to identify one element in contract reformation cases: specifically, to determine when a party's fault will bar equitable relief. We recognize that the term sometimes is used in tort law, and it is included in ORS 30.115, Oregon's statute granting "guest passenger" immunity. See State v. Gutierrez-Medina , 365 Or. 79, 88, 442 P.3d 183 (2019). The term also appears, on occasion, in other cases and statutes. See, e.g. , ORS 672.200(2) (engineering license may be revoked for "gross negligence, negligence or incompetence in the practice of engineering"). Nothing in this opinion is intended to suggest that the meaning of the equitable concept of "gross negligence" in contract reformation and rescission that we discuss here relates in any way to the function and meaning of that term in other contexts.

Williston makes the point directly:
"If by mistake of the parties some part of what was agreed upon is omitted from the writing, then it is not, in truth, the parties' contract. To enforce such an incomplete contract would be to disappoint the parties and to miscarry them into a conclusion neither contemplated and into which neither would have wittingly entered."
Richard A. Lord, 27 Williston on Contracts § 70.49, 352-53 (4th ed. 2003). Williston goes on to say that "[s]uch a contract may be reformed to express the actual agreement * * *." Id. See also A&T Siding, Inc. , 358 Or. at 42, 359 P.3d 1178 ("Reformation * * * is an equitable remedy by which a court may revise the written expression of an agreement to conform to the intentions of the parties to it.").

One passing reference in the Court of Appeals opinion could be read as suggesting that Wilson was aware of the mistake before the documents were signed: "Wilson testified that he was not alarmed by the mistake in the trust deed *** because he assumed that the title company in Klamath Falls would read over the documents and catch any errors before closing." Troubled Asset Solutions , 291 Or. App. at 533, 422 P.3d 314. Such an implication is not supported by the record. Wilson's testimony was about what he would have done if he had noticed a mistake while reviewing the document: "But if I was reading this, I would not be alarmed with that being in there because I would go down and find out that it is-that his property had been described and included in the document that he was putting in that for additional collateral." Nothing in the record suggests that Wilson knew of the mistake in the trust deed at the time of closing. The trial court found that, when the documents were signed, Wilcher thought that the trust deed did pledge his personally owned property as collateral for the loan, and that finding is supported by evidence in the record.

We recognize that, in considering whether there has been negligence in drafting a contract, a wide range of individuals might be responsible. There might have been negligence on the part of the employee asked to prepare the contract; a supervisor may have been negligent in hiring or training or in delegating the drafting to the employee; or an employee may have failed to exercise reasonable care in selecting an independent party-a lawyer or real estate professional-to prepare the documents. Here, the documents were prepared by agents of MEX, a party to the transaction, and no one disputes that MEX was responsible for their preparation.

The Restatement adds the critical caveat that the duty of good faith and fair dealing "extends only to the performance and enforcement of the contract and does not apply to the negotiation stage prior to the formation of the contract. *** During the negotiation stage each party is held to a degree of responsibility appropriate to the justifiable expectations of the other." Restatement § 157 comment a.

As noted earlier, the trial court made certain findings adverse to Wilcher based on conduct after the loan went into default, but we do not rely on those findings here. Wilcher also asserts that TAS engaged in improper conduct after default, by foreclosing prior to reforming the trust deed and by arguing for reformation during eviction proceedings. To the extent those assertions relate to the reformation of the trust deed, we find them unpersuasive or irrelevant. To the extent they may relate to other assignments of error raised by Wilcher in the Court of Appeals and that may be addressed by that court on remand, we express no opinion regarding them.